IN RE C.B.

[Cite as *In re C.B.,* 129 Ohio St.3d 231, 2011-Ohio-2899.]

*Final, appealable order — R.C. 2505.02 — When a trial court denies a children-services agency's motion to modify temporary custody to permanent custody, terminates the placement of temporary custody with the agency, and awards legal custody to a parent, the order is final and appealable under R.C. 2505.02.*

(No. 2010-0180 — Submitted February 16, 2011 — Decided June 22, 2011.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 92775.

_____

SYLLABUS OF THE COURT

When a trial court denies a children-services agency's motion to modify temporary custody to permanent custody, terminates the placement of temporary custody with the agency, and awards legal custody to a parent, the order is final and appealable under R.C. 2505.02.

_____

CUPP, J.

{¶ 1} Once C.B. was adjudicated a dependent child, the Cuyahoga County Department of Children and Family Services ("CCDCFS") was granted temporary custody. CCDCFS placed C.B. with foster parents. After more than a year, CCDCFS sought to be awarded permanent custody of the child and termination of the rights of the natural parents, thereby allowing the agency to place the child for adoption.

{¶ 2} The juvenile court denied CCDCFS's motion and terminated CCDCFS's temporary custody of the child. The court also ordered that the child be placed with the father. Accordingly, it granted the father legal custody of the

child but continued CCDCFS's protective supervision of the child so that progressive in-home and overnight visitation with the father could be implemented. According to the court's order, the temporary-custody order was to terminate within the week.

{¶ 3} Two days later, CCDCFS filed a motion to modify the dispositional order. CCDCFS requested a two-month extension of temporary custody to complete the progressive visitation schedule. In the motion, CCDCFS asserted that the goal of gradual, increased visitation could not be achieved without the additional time. The court stayed the order that terminated CCDCFS's temporary custody, pending a hearing on CCDCFS's motion. The child's mother then appealed the order granting custody to the father, and the child's guardian ad litem filed a cross-appeal on behalf of the child, challenging the trial court's denial of CCDCFS's motion for permanent custody and the award of legal custody to the father.

{¶ 4} The Court of Appeals of Cuyahoga County dismissed the appeal on the authority of *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, 873 N.E.2d 886. The child's guardian ad litem sought discretionary review by this court, asking whether an award of legal custody by a trial court in a neglect or dependency proceeding is a final order from which an appeal may be taken by the minor child who is the subject of the order, whether an order granting legal custody is a final, appealable order, and whether a minor child in a permanent-custody case is entitled to counsel. We accepted jurisdiction. 125 Ohio St.3d 1461, 2010-Ohio-2753, 928 N.E.2d 737.

{¶ 5} For an order to be final and appealable, it must meet the requirements of R.C. 2505.02(B). R.C. 2505.02(B) provides:

{¶ 6} "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

2

**{¶ 7}** "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

**{¶ 8}** "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment."

**{¶ 9}** In *In re Adams*, 115 Ohio St.3d 86*,* 2007-Ohio-4840, 873 N.E.2d 886, a trial court denied a children-services agency's motion to modify an order granting it temporary custody to an order of permanent custody. The appellate court dismissed the agency's appeal of the denial for lack of a final, appealable order. This court affirmed and held, "A trial court order denying the motion of a children-services agency to modify temporary custody to permanent custody and continuing temporary custody is not a final, appealable order under R.C. 2505.02(B)(1) or (2)."

**{¶ 10}** The rationale for our conclusion in *Adams* was that the order denying permanent custody of the child to the children-services agency did not determine the action or prevent a judgment under R.C. 2505.02(B)(1). *Adams* at ¶ 36-37. Rather, the parties were subject to further court orders because the temporary-custody order remained in place and the status quo was thus maintained. Id. at ¶ 36. Moreover, the children-services agency was not foreclosed from seeking a different dispositional order, such as returning the child to a parent, placing the child in the legal custody of a relative, or renewing a request for permanent custody. Id. at ¶ 37.

**{¶ 11}** We also concluded in *Adams* that a children-services agency does not have a substantial right in the permanent custody of a child based on the fact that the agency has temporary custody of the child. Id. at ¶ 42. See R.C. 2505.02(B)(2). In contrast, a parent does have a substantial right in the custody of his or her child. Id. at ¶ 43. This substantial right was a basis of the holdings of *In re Murray* (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169, and *In re H.F.,* 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607. In *Murray*, this court held that

"[a]n adjudication by a juvenile court that a child is 'neglected' or 'dependent' as defined in R.C. Chapter 2151 followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a 'final order' within the meaning of R.C. 2505.02 and is appealable to the courts of appeals pursuant to R.C. 2501.02."[1]  *Murray*, syllabus.  However, the principles supporting this conclusion were that parents who are suitable persons have a permanent right to the custody of their minor children, id. at 157, and that parents of children who have been adjudicated neglected or dependent, and who have been deprived of the custody of their children, have a right to immediate appellate review "to determine if such deprivation meets the requirements justifying such deprivation," id. at 159.  This holding was applied in *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, ¶ 9, in which this court determined that an order adjudicating a child abused, neglected, and dependent, and awarding temporary custody of the child to a children-services agency, was a final order pursuant to R.C. 2505.02, that had to be appealed by the child's parent within 30 days of the order.

{¶ 12} The underlying principles decided in *Adams*, *Murray,* and *H.F.* guide our analysis in this case.  We have previously held that custody hearings are special proceedings.  R.C. 2505.02(B)(2); *Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, 873 N.E.2d 886, ¶ 43.  And in this custody hearing, the juvenile court did not simply deny CCDCFS's motion for permanent custody of the child while continuing the placement of temporary custody with the agency.  Rather, the juvenile court terminated CCDCFS's temporary custody and granted legal custody to the child's father.  The juvenile court's disposition of legal custody was permanent and ended the existing proceeding with respect to the child.  R.C.

---

1.  When *Murray* was decided, a slightly different version of R.C. 2505.02 was in effect. Am.Sub.H.B. No. 412, 141 Ohio Laws, Part II, 3563, 3597.

2151.42.[2] Thus, the juvenile court's order determined the action and prevented any further judgment. R.C. 2505.02(B)(1).

{¶ 13} R.C. 2505.02(A)(1) defines "substantial right" as a "right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." A substantial right is a legal right enforced and protected by law. *State ex rel. White v. Cuyahoga Metro. Hous. Auth.* (1997), 79 Ohio St.3d 543, 545, 684 N.E.2d 72.

{¶ 14} In this case, when the juvenile court considered CCDCFS's motion to modify temporary custody to permanent custody, the court was required by statute to consider whether that modification was in the best interests of the child. R.C. 2151.42(A). See also R.C. 2151.414(D) (the best-interest factors a court is to consider at a permanent-custody hearing); *In re Cunningham* (1979), 59 Ohio St.2d 100, 13 O.O.3d 78, 391 N.E.2d 1034 (the best-interest standard is the primary consideration in permanent-custody cases). In that same proceeding, however, the juvenile court was also required by statute to appoint a guardian ad litem, whose purpose is to protect the interest of the child and "assist a court in its determination of a child's best interest." R.C. 2151.281(B); Sup.R. 48(B)(1). In this regard, the guardian's role is to "perform whatever functions are necessary to protect the best interest of the child, including, but not limited to * * * monitoring the services provided the child by the public children services agency * * * [and filing] any motions and other court papers that are in the best interest of the child." R.C. 2151.281(I). See also Sup.R. 48(D)(1) ("A guardian ad litem shall represent the best interest of the child for whom the guardian is appointed");

---

2. See also R.C. 2151.353(A)(3)(a) (legal custody is a dispositional option following an initial adjudication of dependency, neglect, or abuse, provided the person to whom legal custody is awarded signs a statement that, among other things, states that "the person understands that legal custody of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority"); R.C. 2151.415(A)(3) (a children-services agency that has been awarded temporary custody may request that the child be placed in the legal custody of a relative or other interested individual).

Sup.R. 48(D)(7) ("When a court appoints an attorney to serve as both the guardian ad litem and attorney for a child, the attorney shall advocate for the child's best interest and the child's wishes in accord with the Rules of Professional Conduct"). Because of the unique role the guardian ad litem has in a permanent-custody proceeding with respect to ensuring that the best interests of a child are considered before custody modifications are made, the guardian ad litem has a statutory right to ensure that the best interests of the child are enforced and protected in the permanent-custody proceeding. Thus, we also conclude that the juvenile court's order affects a substantial right.

{¶ 15} Therefore, we hold that when a trial court denies a children-services agency's motion to modify temporary custody to permanent custody, terminates the placement of temporary custody with the agency, and awards legal custody to a parent, the order is final and appealable under R.C. 2505.02.

{¶ 16} Appellants presented a third proposition of law that purports to raise a question whether a child who is a party in a permanent-custody case is entitled to legal counsel separate from that of the guardian ad litem who is also an attorney. In *In re Williams*, we held that "a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, syllabus. Appellants assert that the juvenile court abused its discretion in failing to appoint separate legal counsel to protect the child's wishes because of the conflict between the child's wishes and the father's interests. We are unable to agree with that assertion.

{¶ 17} In the juvenile court's 2008 entry appointing the guardian ad litem, there was no statement that the child's wishes conflicted with the father's interests. Neither did the guardian discover any conflict suggesting that appointment of independent counsel would be appropriate. Although the guardian ad litem in the trial court was acting only as to the child's best interest

and not additionally in the capacity as the child's attorney, there is no indication that the guardian did not faithfully discharge his duties or that there was any reasonable basis for the juvenile court to have appointed independent counsel for the child. R.C. 2151.281(B)(1) and (D).[3] Thus, the "certain circumstances" contemplated in *Williams* for the appointment of independent counsel to represent a child who is the subject of a proceeding to terminate parental rights are not currently presented in this case.

{¶ 18} In our independent review of the record before us, we are also unable to find any motion made to the trial court requesting that independent counsel be appointed for the child, and the trial court never had occasion to rule on this issue. Consequently, in addition to the records not supporting the claim that the child required independent counsel in this case, the issue is not properly before this court, and we decline to consider this matter in the first instance. This proposition of law is therefore dismissed as having been improvidently accepted.

{¶ 19} Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the appellate court for further proceedings consistent with our decision, in accordance with the expedited appeals provision of App.R. 11.2.

Judgment reversed
and cause remanded.

---

3. In March 2009, Sup.R. 48, which addresses guardians ad litem, became effective. In an attempt to provide guidance beyond that provided in R.C. 2151.281 for guardian ad litem situations, this rule clearly and specifically sets forth rules applicable to the appointment and responsibilities of a guardian ad litem. The rule requires that an order of appointment include a "statement regarding whether a person is being appointed as a guardian ad litem only or as a guardian ad litem and attorney for the child." Sup.R. 48(C)(1)(a). The rule also details the procedures for circumstances where a conflict of interest arises between the child's best interests and the child's wishes. Sup.R. 48(D)(1), (7), (8), and (10). Because this rule provides much needed guidance for situations involving guardians ad litem, future concerns with respect to the nature of a guardian's possible dual role as both guardian and counsel for the child should be alleviated.

O'CONNOR, C.J., and LUNDBERG STRATTON, LANZINGER, and McGEE BROWN, JJ., concur.

O'DONNELL, J., concurs in judgment only.

PFEIFER, J., dissents.

_____

**McGEE BROWN, J., concurring.**

{¶ 20} I concur in the judgment but write separately to express concern about how the legal system has handled C.B.'s case. In 1997, Congress passed the Adoption and Safe Families Act ("ASFA"), Pub.L. No. 105-89, 111 Stat. 2115. A key aim of this act is to prevent children from languishing in the foster-care system. Ohio's codification of the ASFA provides that any child who is in temporary custody for 12 out of 22 months (with limited exceptions) shall have a prompt permanency determination. R.C. 2151.413(D)(1) and 2151.414(A)(1) and (A)(2). Yet five years after C.B. became a dependent child, she does not have permanency, the adults responsible for her continue to argue over legal issues, and she is slowly losing her ability to have a stable childhood with a permanent family.

{¶ 21} A parent's right to his or her children generally trumps the rights of all others, but not when there is clear and convincing evidence of abuse or neglect. *In re K.H.*, 119 Ohio St. 3d 538, 2008-Ohio-4825, 895 N.E.2d 809, at ¶ 40-42. In the event that a court removes a child from a parent because of abuse or neglect, the parent faces court orders to remedy the conditions causing the child's removal. If a parent fails within 12 months to remedy these problems or to make substantial progress toward their remediation, the child is entitled to a permanency determination. R.C. 2151.413(D)(1) and 2151.414(A)(1), (A)(2), and (E)(1). It is paramount that juvenile courts stick to these time frames for the best interest of the child.

**{¶ 22}** In this case, the legal system has done harm to this child. No child should spend five years in foster care. It is unconscionable.

**{¶ 23}** We are required to remand this case for determinations consistent with our decision. In so doing, I urge the courts to comply with the rules requiring the speedy resolution of abuse and neglect cases and to expeditiously move C.B.'s case to finality. App.R. 11.2(C) and (D).

**{¶ 24}** When children must be removed from their parents, juvenile courts are required to resolve their cases within statutory time frames. We do no work that is more important than protecting children and giving them a right to a childhood free from abuse and neglect with a permanent family. In the best of circumstances, the birth family will be the permanent family, but when it cannot be, we owe it to these children to give them their best opportunity to be adopted into a loving, safe family. Unfortunately, the ability to be adopted diminishes as a child ages in the foster-care system. For this reason, Congress and Ohio enacted the provisions of the ASFA, and our courts must resolve these cases as quickly as possible.

O'CONNOR, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

**{¶ 25}** I dissent. I would affirm the holding of the court of appeals that there is no final, appealable order in this case. I base this conclusion on the state of the record. The order committing the child to the temporary custody of the Cuyahoga County Department of Children and Family Services ("CCDCFS") was never terminated. The court of appeals' entry denying a motion to reconsider its denial of an en banc consideration of the case tells the story:

**{¶ 26}** "Once again, the denial of a state's motion for permanent custody is not a final appealable order. Child is in protective custody of the county. Issues remain pending in the trial court."

**{¶ 27}** In an entry signed February 1, 2009, the juvenile court judge originally terminated CCDCFS's temporary custody, effective February 5, 2009; then, in response to a CCDCFS motion, in an order signed on February 3, 2009, the judge stayed the termination of temporary custody pending a February 27, 2009 hearing. Before that hearing was held, C.B.'s mother appealed to the court of appeals. I would hold that there was no final order in place for the mother to have appealed from.

**{¶ 28}** The case unfolded like this. In the judgment entry signed February 1, 2009, the juvenile court judge decreed:

**{¶ 29}** "The order heretofore made committing the child to the temporary custody of the Cuyahoga County Department of Children and Family Services is terminated effective February 5, 2009. The child is committed to the protective supervision of CCDCFS with the legal custody of the father, Anthony Wylie * * *.

**{¶ 30}** "Amended case plan to be filed with the following modifications: reinstatement of unsupervised visitation; progressive implementation for in-home visitation, bi-weekly extended visitation, and overnight weekend visitation; referral for family preservation to assist child and parent with transition needs and services including appropriate day care, medical care, etc.

**{¶ 31}** "This matter is continued to February 27, 2009 at 9:30 a.m. for a custody review hearing pursuant to O.R.C. §2151.417(C), for preliminary hearing upon the [child support enforcement agency's] motion to establish support filed April 18, 2006 and Attorney Witt's motion for attorney fees filed 4-28-08.

**{¶ 32}** "Parties are advised that they have thirty (30) days from the date of this entry to file an appeal with the Court of Appeals."

**{¶ 33}** Despite the fact that the entry bears the date of February 1, 2009, under the judge's signature, a statement below that date reads, "Filed with the clerk and journalized by Cuyahoga Juvenile Court Clerks [sic] Office, Volume 10, Page 2556, February 5, 2009, cjdmh."

**{¶ 34}** On February 3, 2009, CCDCFS filed a motion for modification of the dispositional order and requested an immediate hearing. The agency asked that its temporary custody be extended to April 16, 2009.

**{¶ 35}** In response, the judge released another order:

**{¶ 36}** "This matter came on for consideration this 3rd day of February, 2009 before the Honorable Judge Alison L. Floyd upon the [sic] with prayer for as [sic] to the Child heretofore judged to be dependent.

**{¶ 37}** "Whereupon the Court finds that CCDCFS through counsel has entered a written notice for modification of dispositional order. The Court, upon its own motion, shall stay its order terminating the agency temporary custody of the child pending hearing on February 27, 2009.

**{¶ 38}** "It is therefore ordered that the Court's prior order terminating the temporary custody of CCDCFS effective February 5, 2009 is stayed from execution pending review hearing on February 27, 2009 at 9:30 a.m. and for preliminary hearing upon the agency's motion for modification of the dispositional order of February 1, 2009."

**{¶ 39}** This order was dated February 3, 2009, beneath the judge's signature line. Again, a separate statement below that date states that the order was filed on February 5, 2009: "Filed with the clerk and journalized by Cuyahoga County Juvenile Court Clerks [sic] Office, Volume 10, Page 2138, February 5, 2009, cjds3."

**{¶ 40}** C.B.'s mother filed a notice of appeal on February 5, 2009. Nothing in the record indicates that the February 27, 2009 hearing that may have modified the court's decision ever occurred. There was no final order to form the

basis of an appeal. This case was not over at the juvenile court level. Although the juvenile court's handling of this case until this point inspires little confidence, the correct disposition here is to affirm the judgment of the court of appeals and remand the case to the juvenile court for a resolution.

_____

R. Brian Moriarty, for appellant C.B.

Jonathan N. Garver, for appellant Thomas Kozel, guardian ad litem, for C.B.

Anthony M. Wylie, pro se.

Judith L. Layne, urging reversal for amicus curiae Guardian Ad Litem Project.

Katherine Hunt Federle, urging reversal for amicus curiae Justice for Children Project.

_____